JENNIFER A. SALEM, ESQ.
Nevada Bar No. 9174
VALERIE DEL GROSSO, ESQ.
Nevada Bar No. 11103
**ORIGINS LEGAL GROUP, LLC**
6787 W. Tropicana Ave., Suite 120A
Las Vegas, NV 89103
Tel: 702-850-7799
Fax: 702-933-9260
jennifer@originslegalgroup.com
valerie@originslegalgroup.com

JORGE SALVA, ESQ.
New York Bar JS0702
**Law Offices of Jorge Salva, PLLC**
116 West 23rd Street, Suite 500
New York, NY 10011
Office: (646) 375-2494
jsalva@jrs-law.com
*Pro Hac Vice Pending*

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| GREENLIGHT ADVANTAGE GROUP, INC., <br><br> Plaintiff, <br><br> vs. <br><br> KANAPTEC ENTERPRISES, INC.; OLIVIA WILSON; CHAD O'LAUGHLIN; and THOMAS MADDEN, <br><br> Defendants. | Case No.: <br><br> **VERIFIED COMPLAINT AND JURY DEMAND** |

GREENLIGHT ADVANTAGE GROUP INC. ("**Greenlight**" or "**Plaintiff**") brings this Verified Complaint by and through its undersigned counsel, Origins Legal Group, LLC, and, if admitted pro hac vice, the Law Offices of Jorge Salva, against defendants KANEPTEC

ENTERPRISES, INC., OLIVIA WILSON, CHAD O'LAUGHLIN, and THOMAS MADDEN alleges as follows:

## INTRODUCTION

1.     Plaintiff brings this securities fraud action arising out of the intentional and deliberate misrepresentations – both express and by omissions – made by defendant KANEPTEC ENTERPRISES, INC. ("**Kaneptec**" or the "**Company**"), and their senior officers and defendants Olivia Wilson ("**Wilson**"), and Chad O'Laughlin ("**O'Laughlin**" and together with Wilson and the Company, the "**Kaneptec Defendants**") to induce Plaintiff during the October 2018 through March 2019 time period (the "**Investment Period**") to: (i) invest over $110,000 for 200,000 shares of the Company's common stock (the "**Stock**"), and 200,000 warrants to purchase additional stock at $0.50 per share (the "**Warrants**"); and (ii) lend the Company an additional $185,000 as evidenced by two promissory notes (the "**Promissory Notes**" and together with the Shares and Warrants, the "**Securities**"), which have been in default for nearly seven (7) months. The amount of no less than $710,696, remains unpaid to Greenlight.  Plaintiff has received no payments whatsoever under the defaulted Promissory Notes since June 14, 2019.

2.     The Kaneptec Defendants induced Plaintiffs to invest $295,000 by marketing Kaneptec as a cutting-edge early stage Cannabidiol ("**CBD**") company committed to a capital expansion in machinery, equipment, laboratories, and clean-energy manufacturing and farming technologies to deliver CBD based products and services to the global marketplace.  Plaintiff, an accredited investor, relied on the Company's representations in its private equity offering of November 9, 2018, as amended on January 4, 2019 (the "**Private Placement Memorandum**" or "**PPM**").

3.     Greenlight was further induced by the solicitations and misrepresentations of co-defendant Thomas Madden ("**Madden**" and together with Kaneptec Defendants, "**Defendants**"), who acted and continues to act as an authorized agent and promoter, but an unregistered broker-dealer, on behalf of the Kaneptec Defendants.

4.     Mr. Madden also represented to Greenlight that Kaneptec would use the proceeds of Plaintiff's $295,000 investment to purchase large CBD/Hemp oil processing machines, additional specialized equipment, expansion of biomass and other capital expenditures.

5.     Their foregoing representations as to the use of Greenlight's $295,000 investment were intentionally and materially false and misleading.

6.     The Kaneptec Defendants, upon information and belief, misappropriated Greenlight's $295,000 investment to: (i) pay prior Kaneptec investors, enrich or compensate Ms. Wilson, Mr. O'Laughlin, Mr. Madden, and other Kaneptec agents personally, (ii) and pursue other unrelated objectives not disclosed in the PPM or in Mr. Madden's representations.

7.     Several facts and events give rise to Plaintiff's claims of securities fraud.  First, the Kaneptec Defendants refuse to provide Greenlight with stock certificates or any other documentation evidencing Greenlight's ownership of 200,000 shares, as Kaneptec represented it would under the Private Placement Memorandum.

8.     Second, in an August 5, 2019 demand letter directed to the Defendants, Plaintiff demanded Kaneptec's books and records reflecting the financial affairs of Kaneptec, corporate organizational documents, Board minutes and resolutions, a list of the Company's stockholders, and an accounting of how Kaneptec used the more than $295,000 Greenlight invested in the forms of promissory notes and Kaneptec stock.

9.     Kaneptec refused to make the requested materials available, which is Kaneptec's obligation and Greenlight's statutory right under Delaware's General Corporation Law § 220.

10.    Upon information and belief, the Kaneptec Defendants have withheld the corporate and financial records to conceal their fraud and misconduct.

11.    Third, the Kaneptec Defendants will not communicate with Greenlight, let alone disclose financial statements or acknowledge Greenlight's right to stock certificates and immediately payment of the $710,696 owed under the defaulted Promissory Notes.

12.    Instead, Mr. Madden, upon information and belief at the direction of the Kaneptec Defendants, would periodically telephone Greenlight's CEO, Dr. Terrence Cash, with assurances that payment would be forthcoming in the next few days, or weeks, as soon as Mr. Madden and/or Kaneptec obtained certain purportedly expected revenue income, or money.

13.     The deliberate secrecy, silence, and unresponsiveness of the Kaneptec Defendants give rise to the inference of scienter on the part of defendants Ms. Wilson and Mr. O'Laughlin, the senior officers of the Company.

14.     As a direct and foreseeable consequence of the fraud and other misconduct committed by the Kaneptec Defendants, Plaintiff has been damaged in the amount of no less than $710,696 under the Promissory Notes plus the $110,000 Greenlight invested in the Stock and Warrants.

## JURISDICTION AND VENUE

15.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a), the "**Exchange Act**"), and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

16.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and § 27 of the Exchange Act.

17.     Venue is proper in this Judicial District pursuant to § 27 of the Exchange Act, and 28 U.S.C. § 1391(b). Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information occurred in substantial part in this District.

18.     KANEPTEC ENTERPRISES, INC. maintains its principal executive office at 10120 West Flamingo Road, Suite 4-222, Las Vegas, Nevada 89147. Certain of the acts and conduct complained of herein, including the dissemination of materially false and misleading information to Greenlight originated at this office.

19.     Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §1391(b) because the acts, conduct, and other wrongs alleged in this Complaint occurred in this District. In connection with the acts, conduct and other wrongs alleged in this Verified Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, interstate telephone, and wire, and electronic communications.

## PARTIES

20.    Plaintiff GREENLIGHT ADVANTAGE GROUP INC. ("**Greenlight**" or "**Plaintiff**") is a corporation duly organized as a Delaware corporation with its principal place of business located in Orlando, Florida.

21.    Defendant KANEPTEC ENTERPRISES, INC. ("**Kaneptec**" or the "**Company**"), is a corporation duly organized as a Delaware corporation with its principal place of business with its principal executive office at 10120 West Flamingo Road, Suite 4-222, Las Vegas, Nevada 89147.

22.    Defendant Olivia Wilson ("**Wilson**") is an individual who, upon information and belief, resides in the State of Nevada. Kaneptec's website https://kaneptec.com/meet-the-founder/ reflects Ms. Wilson as the Founder and CEO of the Company. The PPM reflects Ms. Wilson as one of two officers leading the Company. The PPM further represents that as of November 9, 2018, Ms. Wilson owned 2,500,000 shares, one-half of the Company's outstanding stock. Wilson made material misrepresentations and/or omitted to state material facts, individually and on behalf of Kaneptec, in this District to induce Greenlight to participate in Kaneptec's offering of the Securities.

23.    Defendant Chad O'Laughlin ("**O'Laughlin**", and together with Kaneptec and Ms. Wilson, the "**Kaneptec Defendants**") is an individual who, upon information and belief, resides in the State of Nevada. The PPM reflects Mr. O'Laughlin as the Company's CEO, but upon statements from Mr. Madden and further information and belief, Mr. O'Laughlin is in fact Kaneptec's Chief Marketing Officer. The PPM further represents that as of November 9, 2018, Mr. O'Laughlin owned 2,500,000 shares, one-half of the Company's outstanding stock. Mr. O'Laughlin made material misrepresentations and/or omitted to state material facts, individually and on behalf of Kaneptec, in this District to induce Greenlight to participate in Kaneptec's offering of the Securities.

24.    Defendants Ms. Wilson and Mr. O'Laughlin by virtue of their reported controlling ownership, status as senior officers, and control of Kaneptec were privy to all material confidential and proprietary information concerning Kaneptec, its operations, finances, financial condition, and present and future business prospects.

25.     Because of their possession and control of such information, defendants Ms. Wilson and Mr. O'Laughlin knew of and recklessly disregarded the material misrepresentations and omissions, including but not limited to: (i) the Use of Proceeds; (ii) the delivery of stock certificates, as each represented in the PPM; and (iii) oral presentations made by Mr. Madden, acting as their authorized agent, that induced Greenlight's $295,000 investment in the Securities.

26.     Defendants Ms. Wilson and Mr. O'Laughlin further had control of the proceeds of Greenlight's $295,000 and were positioned to use and disburse said proceeds in a manner that rendered the representations made in the PPM and in Mr. Madden's oral presentations false and misleading.

27.      Defendants Ms. Wilson and Mr. O'Laughlin are each liable as a direct participant in the fraud and other misconduct complained of herein.

28.     Defendants Ms. Wilson and Mr. O'Laughlin are further each liable as a "controlling person" within the meaning of Section 20 of the Exchange Act and had the power and influence to cause Kaneptec to engage in the unlawful conduct complained of herein.

29.     Because of their positions of control, the individual defendants Ms. Wilson and Mr. O'Laughlin were each able to and did directly, or indirectly, control the conduct of Kaneptec and its agents, including but not limited to Mr. Madden.

30.     To the extent that Ms. Wilson and Mr. O'Laughlin personally performed the wrongful acts alleged herein, they are each directly liable.

31.     To the extent that other persons, including Mr. Madden, performed such wrongful act, defendants Mr. Wilson and Ms. O'Laughlin are liable as controlling persons.

32.     Defendant Thomas Madden ("**Madden**", and together with the Kaneptec Defendants, "**Defendants**") is an individual, who upon information and belief, resides in the State of Washington.  Upon information and belief, Mr. Madden markets himself as a business consultant, assisting early state company in raising capital.  Mr. Madden is not a registered broker-dealer.

33.     On or about May 23, 2016, the State of Washington Department of Financial Institutions

Securities Division entered an Order finding that Mr. Madden "*violated Washington statute RCW 21.20.040 by offering and selling securities while not registered as a securities broker-dealer in the State of Washington*."  Said Washington State Order found that Mr. Madden also violated RCW 21.20.010 because he "*made untrue statements of material fact or omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.*"

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

34.     On its website, https://kaneptec.com/company/ , Kaneptec markets itself as an early-stage company that "creates ultra-high quality cosmeceutical, wellness and pet care products. 'Kaneptec's] unique formulations deliver the holistic, healing health-giving benefits of Cannabidiol (CBD), terpenes and other powerful, natural ingredients to discerning customers."

35.     The Company's PPM also describes Kaneptec as an:

[E]arly stage global nutraceutical company, was formed to provide ultra-premium and innovative Cannabidiol ("CBD") products and services to the global market place. The Company was formed because market research indicates that there is a significant need and demand for these products that are lab-tested for consistency and extracted from genetically superior hemp plants which yield premium grade CBD. Kaneptec plans to be on the forefront of supplying consumers with the finest and purist quality All-Natural organic CBD Rich Hemp Oil products. The Company will provide products that promote therapeutic and wellness benefits not only for humans, but also pets. We strive to be the highest recommended CBD product supplier world-wide and promote optimal health through the profound power of CBD.

36.     In the PPM, Kaneptec touted its purported competitive strengths, manufacturing operations, cultivation, laboratory, and warehouse facilities:

Business Operations and Competitive Strengths

KANEPTEC ENTERPRISES, INC. is a vertically integrated company that manages all aspects of Hemp Production from Cultivation Operations to Processing and Manufacturing.

Cultivation Facilities

Our leased state-licensed organic hemp farm is located in Alamo, NV.  We utilize a permaculture platform which is a system that is designed to work with nature to create a

truly sustainable and self-sufficient ecosystem…We run a zero-waste manufacturing operation.  We are able to cultivate year round using both green houses and field grown hemp verticals….

Laboratory and Warehouse Facility

Hemp specifically falls under a fuel classification that is called biomass.  This biomass is transported to our leased state-of-the-art extraction and warehouse facility located in Las Vegas Nevada….

37.     Kaneptec delivered the Private Placement Memorandum to Greenlight and other investors pursuant to the Company's private offer and sale (the "**Offering**") to "accredited investors" only, under Rule 506 of Regulation D, promulgated under Section 4(2) of the Securities Act of 1933. Kaneptec offered the sale of 20 Units, with each unit consisting of 50 shares of Stock and 50,000 of Warrants at a purchase price of $25,000 per unit. Per the PPM, the 50,000 in Warrants entitles the holder to purchase 50,000 shares of Kaneptec common Stock at $0.50 per share with an expiration date of June 30, 2023.

38.     In furtherance of the Offering, in two (2) places in the PPM, Kaneptec represented that the subscriber for the Stock would receive physical certificates evidencing its ownership:

Closings of the Offering (each a "Closing") will occur from time to time, at our sole discretion, as subscriptions are received until termination of the Offering. At each Closing, we will deliver a notice of the Closing to each Qualified Investor whose subscription has been accepted or rejected at such Closing, and if such Qualified Investor's subscription has been rejected, such notice will be accompanied by a refund of the purchase price without deductions or interest. **Promptly following delivery of such notice, we will deliver stock certificates representing the shares purchased with each accepted subscription.**

39.     In its Private Placement Memorandum, Kaneptec further stated that the proceeds of the Offering would "*be used for acquisitions, licensing, working capital and research and development.  Additionally, proceeds will be used for the placement agent fees and other professional expenses (including legal fees) that may be incurred to complete the Offering*". (Emphasis added).

Our senior management will allocate the net proceeds of the Offering. They will have

significant discretion to adjust the application of the proceeds set forth below in order to respond to various business circumstances and opportunities.  In the event that our plans change, our assumptions change or prove to be inaccurate, we may have to reallocate the proceeds or use the proceeds for other purposes…..

We anticipate that all net proceeds will be used for working capital and other general corporate purposes, assuming the maximum is raised. Pending application of the net proceeds, we intend to invest the funds in short-term, interest bearing insured savings accounts or investment grade securities.

The foregoing discussion represents our best estimate of our allocation of the net proceeds from the sale of the Securities based on our current plans. . . .

If the maximum is raised in the Offering, we anticipate that our existing resources, together with the net proceeds of the Offering, will enable us to maintain our current and planned operations for the foreseeable future….

40.     The PPM specifically instructed Greenlight and other prospective investors to deliver the executed Subscription Agreement, Accredited Investor Certification, and Investor Profile, together with the purchase price (via check payable to KANEPTEC ENTERPRISES, INC. or wire), in an amount equal to the total purchase price of the Securities, to Ms. Wilson's attention at Kaneptec's las Vegas, Nevada headquarters.

41.     In reliance on the representations the Kaneptec Defendants made in the PPM and Mr. Madden's representations, made as their authorized agent, Greenlight purchased 200,000 shares of Stock in Kaneptec, and approximately 200,000 warrants.

42.     In or around February-March 2019 Greenlight also lent Kaneptec $185,000 via two wire transfers in the amounts of $125,000 and $60,000 respectively.  Mr. O'Laughlin and Thomas Madden had orally represented to Greenlight that Kaneptec would use the proceeds of the $185,000 loan to purchase large CBD/Hemp oil processing machines, additional special equipment, expansion of biomass and other capital expenditures.

43.     Greenlight relied on Mr. O'Laughlin' and Mr. Madden's representation in agreeing to lend Kaneptec an additional $185,000.

44.     The $185,000 loan is evidenced by two 30-day promissory notes payable to Greenlight: (i)

the first promissory note, executed by Mr. O'Laughlin on or about February 20, 2019 for a profit sharing return of 40% or $175,000 payable on March 20, 2019 (the $125,000 principal plus a $50,000 bonus) with a default rate of interest at 12% per annum (the "**February Note**"); and (ii) the second promissory note executed by Mr. Madden on or about March 5, 2019 for a profit sharing return of 40% or $84,000 payable on March 20, 2019 (the $60,000 principal plus a $24,000 bonus) with a default rate of interest at 12% per annum (the "**March Note**").  Each Promissory Note "*is secured by a security interest in certain collateral (stock in Kaneptec at $0.50 per share), which security interest is granted by the Borrower to the Noteholder*" (italics added for emphasis). Accordingly, Kaneptec owed Greenlight $259,000 in the aggregate upon maturity of both Promissory Notes.

45.    To date, Greenlight has only received partial payment in the amount of $105,000 of the $259,000 originally owed at the maturity of both Promissory Notes, and no payment whatsoever since June 14, 2019.  Accordingly, Kaneptec has defaulted on both Promissory Notes as repayment is 195-210 days past due.  As a result of the defaults and a profit-sharing return of 40% per month, along with a default interest rate of 12% per annum, as set forth in each Promissory Note, using conservative calculations, Kaneptec owes Greenlight the sum of no less than $710,696 under both Promissory Notes.

46.    Instead, Mr. Madden, upon information and belief at the direction of Ms. Wilson and/or Mr. O'Laughlin, would periodically telephone Greenlight's CEO, Dr. Terrence Cash, with assurances that payment would be forthcoming in the next few days, or weeks, as soon as Mr. Madden and/or Kaneptec obtained certain purportedly expected revenue, income, or money.

47.    On August 5, 2018, Jorge R. Salva, legal counsel for Greenlight sent at letter addressed to all Defendants, via their respective emails, demanding that Kaneptec deliver stock certificates to Greenlight evidencing its ownership of 200,000 shares and a repayment of no less than $710,696 owed under the Promissory Notes.

48.    Mr. Salva further demanded under Delaware's General Corporation Law § 220 that Kaneptec disclose to the Company's corporate and financial records or provide an accounting of how Kaneptec used the proceeds Greenlight's $295,000 investment.

49.    The foregoing demand was verified and sworn to by Dr. Terrence Cash, CEO and

Chairman of Greenlight as required under 8 Del. C. § 220.

50.     To date, the Kaneptec Defendants have refused to disclose or make available the foregoing records and documents available to Greenlight.

51.     The Defendants' wrongful conduct in making fraudulent misrepresentations and failing to disclose material facts related to the Company and the Kaneptec Defendants' use of the $295,000 invested by Greenlight have caused Plaintiff damages of no less than $820,696.

## FIRST CAUSE OF ACTION

**Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder
(Against the Kaneptec Defendants)**

52.     Plaintiff repeats and alleges each of the allegations set forth hereinabove as though fully set forth herein.

53.     As set forth herein, the Kaneptec Defendants carried out a plan, scheme and course of conduct which was intended to and did: (1) deceive Greenlight and (2) cause Greenlight to purchase Kaneptec's Stock for approximately $110,000 and loan Kaneptec an additional $185,000 to Kaneptec under the Promissory Notes. In furtherance of this unlawful scheme, plan, and course of conduct, Kaneptec Defendants, and each of them, took the actions set forth herein.

54.     The Kaneptec Defendants committed the following acts: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading, including but not limited to the Use of the Proceeds of the Offering and the delivery of stock certificates contained in the PPM, and oral presentations made by Mr. Madden, acting as the Kaneptec Defendants' authorized agent, that induced Greenlight's $295,000 investment in the Securities; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon Greenlight, including the Kaneptec Defendants' refusal to disclose the Company's corporate and financial records or provide an accounting of how Kaneptec used the proceeds Greenlight's $295,000 investment, in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

55.     The Kaneptec Defendants, directly and indirectly, by the use, means, or instrumentalities of interstate commerce, including the use of telephones, mails, wires, and Internet disseminated

the materially false statements and omissions, including but not limited to the Use of the Proceeds of the Offering and the delivery of stock certificates contained in the PPM, and oral presentations made by Mr. Madden, acting as the Kaneptec Defendants' authorized agent, that induced Greenlight's $295,000 investment in the Securities, which Greenlight reasonably relied on in deciding to wire $295,000 to Kaneptec and purchase the Securities.

56.     The Kaneptec Defendants had actual knowledge of the foregoing material misrepresentations and omissions, or acted with reckless disregard of the truth in that they failed to ascertain and disclose such facts, even as the Kaneptec Defendants decided to: (a) not issue the Company's stock certificates evidencing Greenlight's ownership interest; and (b) use the proceeds of Greenlight's $295,000, upon information and belief, to pay prior investors, enrich or compensate Ms. Wilson, Mr. O'Laughlin, Mr. Madden, and other Kaneptec agents; (c) and/or pursue other unrelated objectives not disclosed in the PPM.

57.     The Kaneptec Defendants' have knowingly concealed their material misrepresentations and/or omissions as they, even after the August 5, 2019 written demands from Plaintiff under Delaware's General Corporation Law § 220, refuse to provide Greenlight with stock certificates, will not acknowledge the $710,696 owed under the Kaneptec Promissory Notes, or disclose the Company's corporate and financial records or otherwise provide an accounting of how Kaneptec used the proceeds Greenlight's $295,000 investment.

58.     Plaintiff purchased the Kaneptec Stock and Warrants, and lent an additional $185,000 under the defaulted Promissory Notes, in ignorance of the facts that the Company would: (a) never issue the Company's stock certificates evidencing Greenlight's ownership interest; (b) use Greenlight's $295,000 investment to, upon information and belief, pay prior investors, enrich or compensate Wilson, O'Laughlin, Mr. Madden, and other Kaneptec agents, or for other purposes rendering their "*Use of Proceeds*" representations in the PPM false and misleading; and (c) refuse to disclose the Company's corporate and financial records or provide an accounting of how Kaneptec used the proceeds Greenlight's $295,000 investment.

59.     Had Greenlight known, or had reason to believe, that the Kaneptec Defendants would not produce stock certificates to Greenlight, misuse and misappropriate Greenlight's $295,000 investment proceeds, and conceal the Company's true financial condition and corporate records,

even after written demand under Delaware's General Corporation Law § 220, Greenlight would have never purchased the Securities.

60.     By virtue of the foregoing Kaneptec Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

61.     As a direct and proximate result of the Kaneptec Defendants' wrongful conduct, Plaintiff has been damaged in the amount of no less than $820,696, the full amount of which to be determined at trial.

## SECOND CAUSE OF ACTION

### Violation of Section 20(a) of the Exchange Act

### (Against the Defendants Wilson and O'Laughlin)

62.     Plaintiff repeats and alleges each of the allegations set forth hereinabove as though fully set forth herein.

63.     Defendants Ms. Wilson and Mr. O'Laughlin acted as controlling persons of Kaneptec within the meaning of Section 20(a) of the Exchange Act as alleged herein.

64.     By virtue of their high-level positions, agency, and their ownership and control of a supermajority of the Company's common stock, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the PPM and oral representations of the authorized agent, Thomas Madden, Kaneptec Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that were (and are) false and misleading, including but not limited to the use of Greenlight's investment proceeds and the delivery of stock certificates, that induced Greenlight's $295,000 investment in the Securities.

65.     Defendants Ms. Wilson and Mr. O'Laughlin, each had direct power, influence, and control of the Company so as to: (a) deny delivery of the Company's stock certificates to Greenlight as represented in the PPM; (b) use the proceeds of Greenlight's $295,000 to, upon information and belief, pay prior investors, enrich or compensate Ms. Wilson, Mr. O'Laughlin, Mr. Madden, and

other Kaneptec agents, or pursue other unrelated objectives not disclosed in the PPM; and (c) refuse to disclose the Company's corporate and financial records or provide an accounting of how Kaneptec used the proceeds Greenlight's $295,000 investment giving rise to the securities laws violations alleged herein.

66.     Defendants Ms. Wilson and Mr. O'Laughlin each had improper proper to mislead Plaintiff and conceal the Company's true financial conditions and their actual use of Greenlight's investment proceeds, including the desire to minimize their personal liability, minimize the risk to their personal stock holdings in Kaneptec, and maximize their personal profits and compensation from Kaneptec, at the risk and expense of Plaintiff and other Kaneptec investors.

67.     As set forth above, defendants Ms. Wilson and Mr. O'Laughlin each violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by their misconduct, misrepresentations, and omissions as alleged in this Verified Complaint.

68.     By virtue of their positions as controlling persons, Ms. Wilson and Mr. O'Laughlin are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of the wrongful conduct committed by defendants Wilson and O'Laughlin, Plaintiff has been damaged in the amount of no less than $820,696, the full amount of which to be determined at trial.

69.     This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of Securities giving rise to the cause of action.

## THIRD CAUSE OF ACTION

### Default and Breach of Promissory Notes

### (Against KANEPTEC ENTERPRISES, INC. and Thomas Madden)

70.     Plaintiff repeats and alleges each of the allegations set forth hereinabove as though fully set forth herein.

71.     In or around February-March 2019 Greenlight lent Kaneptec $185,000 via two wire transfers in the amounts of $125,000 and $60,000 respectively.

72.     The $125,000 loan to Kaneptec was evidenced by a promissory note executed by Mr. O'Laughlin as an authorized officer of Kaneptec on or about February 20, 2019.  The $125,000

Promissory Note provided for a profit-sharing return of 40% or $175,000 payable on March 20, 2019 (the $125,000 principal plus a $50,000 bonus) with a default rate of interest at 12% per annum.

73.     The $60,000 loan to Kaneptec was evidenced by a promissory note executed by Mr. Madden as an authorized agent of the Kaneptec Defendants on or about March 5, 2019.  The $125,000 Promissory Note provided for a profit-sharing return of also 40% or $84,000 payable on March 20, 2019 (the $60,000 principal plus a $24,000 bonus) with a default rate of interest similarly at 12% per annum.

74.     The security under each Note was described as follows: "*secured by a security interest in certain collateral (stock in Kaneptec at $0.50 per share), which security interest is granted by the Borrower to the Noteholder*". (emphasis added).

75.     Accordingly, Greenlight was owed $259,000 in the aggregate upon maturity of both Promissory Notes.

76.     To date, Greenlight has only received payment in the amount of $105,000 of the $259,000 owed at the maturity of both the February and March Notes, and no payment whatsoever since June 14, 2019.

77.     Accordingly, Kaneptec and Mr. Madden have defaulted on both Notes as repayment is 195-210 days past due.

78.     Greenlight has repeatedly advised the Kaneptec Defendants and Mr. Madden in writing and via telephone of their default under the Promissory Notes, including but not limited to the August 5, 2019 Demand Letter.

79.     As a result of the defaults and a profit-sharing return of 40% per month, along with a default interest rate of 12% per annum, as set forth in each Note, Kaneptec owes Greenlight the sum of no less than $710,696 under both Promissory Notes.

80.     As a direct and proximate result of the Kaneptec's and Mr. Madden's default of the Promissory Notes, Plaintiff has been damaged in the amount of no less than $710,696, the full amount of which to be determined at trial.

## **FOURTH CAUSE OF ACTION**

### **Common Law Fraud**

### **(Against Thomas Madden)**

81.    Plaintiff repeats and alleges each of the allegations set forth hereinabove as though fully set forth herein.

82.    At all times relevant herein, Mr. Madden has acted as an authorized agent of the Kaneptec Defendants and engaged in the solicitation of Greenlight, and upon information and belief other investors, to purchase Kaneptec Stock in connection with the Offering and lend additional monies to the Company with promises of returns of 40% under the short-term February and March 2019 Promissory Notes.

83.    At all times relevant herein, Mr. Madden has acted as an unregistered broker dealer in violation of Section 15(a)(1) of the Exchange Act.

84.    In soliciting and inducing Greenlight to invest $295,000 in Kaneptec in the form of 200,000 shares of Stock, 200,000 Warrants, and the two Promissory Notes, Mr. Madden made material misrepresentations on behalf of the Company that Kaneptec would use the proceeds of Greenlight's investment to  purchase large CBD/Hemp oil processing machines, additional special equipment, expansion of biomass and other capital expenditures to grow the Company.

85.    Upon information relief, Mr. Madden, an unregistered broker-dealer, received compensation in the form of either cash and/or equity in Kaneptec for his solicitations of Greenlight to purchase the Securities.

86.    At the time of Mr. Madden's foregoing misrepresentations concerning the Kaneptec Defendants' intended use of proceeds of Greenlight's $295,00 investment, Mr. Madden, upon information and belief, knew them to be false, or with reckless disregarded their falsity, and made them with the intention of causing Greenlight to deliver the $295,000 to Kaneptec.

87.    Mr. Madden, upon information and belief, was aware that the foregoing false information would be used and relied upon by Greenlight, a known party, to decide on investing $295,000 in Kaneptec.

88.   At the time the foregoing misrepresentations, Mr. Madden, upon information and belief, knew or had reason to know that the Kaneptec Defendants would misappropriate the proceeds of Greenlight's $295,000 to pay prior investors, enrich or compensate Mr. Wilson, Ms. O'Laughlin, himself, and other Kaneptec agents, or pursue other unrelated objectives not related to the growth or operation of the Company.

89.   Greenlight reasonably relied on the foregoing false representations and omissions of material fact to invest the $295,000 in Kaneptec Securities.

90.   Greenlight's reliance on Mr. Madden's false misrepresentations and omissions was reasonable and justified.

91.   As a direct and proximate result of Mr. Madden's wrongful conduct, Plaintiff has been damaged in the amount of no less than $820,696, the full amount of which to be determined at trial.

### FIFTH CAUSE OF ACTION

### Negligent Misrepresentation

### (Against Thomas Madden)

92.   Plaintiff repeats and alleges each of the allegations set forth hereinabove as though fully set forth herein.

93.   Plaintiff repeats and alleges each of the allegations set forth hereinabove as though fully set forth herein.

94.   At all times relevant herein, Mr. Madden has acted as an authorized agent of the Kaneptec Defendants and engaged in the solicitation of Greenlight, and upon information and belief other investors, to purchase Kaneptec Stock in connection with the Offering and lend additional monies to the Company with promises of returns of 40% under short-term promissory notes.

95.   At all times relevant herein, Mr. Madden has acted as an unregistered broker dealer in violation of Section 15(a)(1) of the Exchange Act.

96.   In soliciting and inducing Greenlight to invest $295,000 in Kaneptec in the form of 200,000 shares of Stock, 200,000 Warrants, and the two Promissory Notes, Mr. Madden made

material misrepresentations on behalf of the Kaneptec Defendants that Kaneptec would use the proceeds of Greenlight's investment to  purchase large CBD/Hemp oil processing machines, additional special equipment, expansion of biomass and other capital expenditures to grow the Company.

97.    At all times relevant herein, Mr. Madden knew or had reason to know that the foregoing material representations and omissions were false, because Mr. Madden in fact, upon further information and belief, had actual or constructive knowledge that the Kaneptec Defendants would misappropriate the proceeds of Greenlight's $295,000 to pay prior investors, enrich or compensate Wilson, O'Laughlin, Mr. Madden, and other Kaneptec agents, or pursue other unrelated objectives not related to the growth or operation of the Company.

98.    Upon information relief, Mr. Madden, an unregistered broker-dealer, received compensation in the form of either cash and/or equity in Kaneptec for his solicitations of Greenlight to purchase the Securities.

99.    The foregoing misrepresentations and omissions concerning Kaneptec's intended use of investor proceeds, were, upon information and belief, made negligently by Mr. Madden to induce Greenlight to invest $295,000 for the Securities.

100.    When Mr. Madden made the foregoing misrepresentations and omissions concerning Kaneptec's intended use of investor proceeds and failed to correct said misrepresentations and omissions, Mr. Madden knew or should have known they were false and misleading and that Greenlight would rely on the them in deciding to purchase the Securities for $295,000.

101.    Greenlight reasonably relied on Mr. Madden's foregoing false representations and omissions of material fact to invest the $295,000 in Kaneptec Securities.

102.    Greenlight's reliance on Mr. Madden's false misrepresentations and omissions was reasonable and justified.

103.    As a direct and proximate result of Mr. Madden's negligent conduct, Plaintiff has been damaged in the amount of no less than $820,696, the full amount of which to be determined at trial.

## SIXTH CAUSE OF ACTION

### Demand for Inspection Pursuant to 8 Del. C. § 220

### (Against the Defendant KANEPTEC ENTERPRISES, INC.)

104. Plaintiff repeats and alleges each of the allegations set forth hereinabove as though fully set forth herein.

105. On August 5, 2019, Greenlight, through its legal counsel, made a written demand (the "**Demand**") to the Kaneptec Defendants for inspection of the following books and records:

· The most recent complete record or list of the stockholders of record of Kaneptec, certified by its transfer agent, showing the name and address of each stockholder and the number of shares of stock registered in the name of each stockholder.

· Any written or electronic contracts, documents or other records in the Company's possession relating to the business relationships between or among Thomas Madden, Chad O'Laughlin, Olivia Wilson, and the Company.

· Any written or electronic contracts, documents or other records in the Company's possession relating to the business relationships between Thomas Madden and Kaneptec.

· All books and records dated or created during the period of January 1, 2018 to present, including but not limited to any minutes of meetings among the Company's Board of Directors (the "Board"), and all Board resolutions and consents (whether issued with or without a Board meeting), related to the $185,000.00 Loan from Greenlight to Kaneptec and the Company's use of the proceeds therefrom.

· Financial and accounting books records reflecting the financial affairs of Kaneptec for the period between January 1, 2018 to present, including tax returns, balance sheets, profit and loss statements, bank statements, and other documents demonstrating the financial condition of the business.

106. The foregoing Demand was verified and sworn to by Dr. Terrence Cash, CEO and Chairman of Greenlight as required under 8 Del. C. § 220.

107. Plaintiff has fully complied with all requirements under Section 220 of the Delaware General Corporation Law respecting the form and manner of making a demand for inspection of Kaneptec's books and records set forth in the Demand.

108. Plaintiff's Demand for inspection is for proper purposes.

109. Moreover, the documents identified in the Demand are necessary and essential to the proper purposes.

110. Plaintiff is entitled to the books and records of the Company described in the foregoing Demand.

111. By reason of the foregoing and pursuant to 8 Del. C. § 220, Plaintiff is entitled to an Order

to permit Plaintiffs to inspect and make copies of the books and records of the Company described in the foregoing Demand.

112.   Plaintiff has no adequate remedy of law.

### SEVENTH CAUSE OF ACTION

**Demand for an Accounting**

**(Against the Kaneptec Defendants)**

113.   Plaintiff repeats and alleges each of the allegations set forth hereinabove as though fully set forth herein.

114.   As set forth above, and upon information and belief, the proceeds of Greenlight's $295,000 investment have been wrongfully diverted to pay prior investors, enrich or compensate Ms. Wilson, Mr. O'Laughlin, Mr. Madden, and other Kaneptec agents, or pursue other unrelated objectives not related to the growth or operation of the Company as had been misrepresented by the Kaneptec Defendants in the PPM and Mr. Madden in his oral presentations.

115.   As set forth above, the Kaneptec Defendants, despite Plaintiff's August 5, 2019 written demand and other written and oral demands, have refused to provide books and records reflecting the financial affairs of Kaneptec or any other information or documentation reflecting how or in what manner the Kaneptec Defendants used the proceeds of Plaintiff's $295,000 investment in the Securities.

116.   Plaintiff has no adequate remedy at law.

117.   To compensate Greenlight for the amount of no less than $820,696 of the damages Greenlight has incurred arising from Defendants' material and fraudulent misrepresentations, it is necessary for the Kaneptec Defendants to provide Greenlight with a full accounting of their use of the proceeds of Greenlight's $295,00 investment, as well as to any profits and proceeds in the past and on a going forward basis wrongfully derived therefrom.

118.   Complete information regarding the use of the proceeds of Greenlight's $295,000 investment is within the exclusive possession, custody, and control of the Kaneptec Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff GREENLIGHT ADVANTAGE GROUP INC. respectfully requests that this Honorable Court grant judgment in favor of Plaintiff and against defendants KANEPTEC ENTERPRISES, INC., Olivia Wilson, Chad O'Laughlin, and Thomas Madden jointly and severally, ordering:

1)      Compensatory damages of no less than $820,696 in an amount to be fully ascertained at trial;

2)      Equity relief, including but not limited to:

a.      An Order permitting Plaintiffs to inspect and make copies of the books and records of KANEPTEC ENTERPRISES, INC., such books and records including:

·      The most recent complete record or list of the stockholders of record of Kaneptec, certified by its transfer agent, showing the name and address of each stockholder and the number of shares of stock registered in the name of each stockholder.

·      Any written or electronic contracts, documents or other records in the Company's possession relating to the business relationships between or among Thomas Madden, Chad O'Laughlin, Olivia Wilson, and the Company.

·      Any written or electronic contracts, documents or other records in the Company's possession relating to the business relationships between Thomas Madden and Kaneptec.

·      All books and records dated or created during the period of January 1, 2018 to present, including but not limited to any minutes of meetings among the Company's Board of Directors (the "Board"), and all Board resolutions and consents (whether issued with or without a Board meeting), related to the $185,000.00 Loan from Greenlight to Kaneptec and the Company's use of the proceeds therefrom.

·      Financial and accounting books records reflecting the financial affairs of Kaneptec for the period between January 1, 2018 to present, including tax returns, balance sheets, profit and loss statements, bank statements, and other documents demonstrating the financial condition of the business.

b.      Imposition of an accounting of any transfer of the Kaneptec Defendants' use of the proceeds of Greenlight's $295,000 investment, as well as to any profits and proceeds in the past and on a going forward basis derived therefrom.

3)      Pre-judgment interest, attorney's fees, and costs; and

4)      For such other and further relief that the Court deems just, proper and equitable.

<div align="center">

**DEMAND FOR TRIAL BY JURY**

</div>

Pursuant to Fed. R. Civ. P. 38, Plaintiff GREENLIGHT ADVANTAGE GROUP INC. respectfully demands a trial by jury on all issues in the within action so triable.

 DATED this 21st day of November, 2019.

<div style="margin-left: 40%;">

Respectfully submitted by:

**ORIGINS LEGAL GROUP, LLC**

By:   _V. Delfin_
      _____

JENNIFER A. SALEM, ESQ.
Nevada Bar No. 9174
VALERIE DEL GROSSO, ESQ.
Nevada Bar No. 11103
6787 W. Tropicana Ave., Suite 120A
Las Vegas, NV 89103
Tel: 702-850-7799
Fax: 702-933-9260
jennifer@originslegalgroup.com
valerie@originslegalgroup.com
Attorneys for Plaintiff

</div>

# **VERIFICATION**

I, Dr. Terrence Cash, being duly sworn, deposes and says: I am the Chairman and CEO of GREENLIGHT ADVANTAGE GROUP INC., the plaintiff in this action. I have read the foregoing answer, Verified Complaint and causes of action, and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters I believe them to be true. To the best of my knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of these papers or the contentions therein are not frivolous pursuant to Rule 11 of the Federal Rules of Civil Procedure.

By: _____

Dr. Terrence Cash
*CEO and Chairman of Plaintiff Greenlight Advantage Group Inc.*

STATE OF Florida )
                       ss.:
COUNTY OF Orange )

On the 18 th day of ~~September~~ November 2019, before me, the undersigned, a Notary Public in and for said State, personally appeared Dr. Terrence Cash personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her individual capacity, and that by her signature on the instrument, the individual, or the person upon behalf of whom the individual acted, executed the instrument.

_____
NOTARY PUBLIC



Machele Rowe
Commission # FF994266
Expires: May 18, 2020
Bonded thru Aaron Notary